UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW TORNQUIST,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF SOUTH DAKOTA, State within USA, In Individual and Official Capacity; COUNTY OF MINNEHAHA, Corporation in SD, In Individual and Official Capacity; CITY OF SIOUX FALLS, Corporation in SD, In Individual and Official Capacity; SOUTH DAKOTA STATE PENITENTIARY INDUSTRIES, Corporation in SD, In Individual and Official Capacity; KRISTI NOEM, Governor of SD, In Individual and Official Capacity; KELLIE WASKO, Secretary of Corrections in SD, In Individual and Official Capacity; TERESA BITTINGER, Warden at SDSP, In Individual and Official Capacity; ANGELA PECHOUS, Unity Coordination and Case Manager at SDSP, In Individual and Official Capacity; JULIE MORRISON, SDSP Employee, In Individual and Official Capacity; ALL UNKONWN EMPLOYEES, Inmate Accounting at SDSP, In Individual and Official Capacity; ALL UNKNOWN EMPLOYEES, at SDSP, In Individual and Official Capacity; AVERA, Medical Provider at SDSP, In Individual and Official Capacity, doing business as Correctional Healthcare; ARAMARK CORRECTION FOOD SERVICE, INC., Food Vendor at SDSP, In Individual and Official Capacity; FALL RIVER COUNTY, Corporation in SD, In Individual and Official Capacity; and PENNINGTON COUNTY, Corporation in SD, In Individual and Official Capacity,<br><br>Defendants. | 4:23-CV-04195-LLP<br><br><br>MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL AND 1915A SCREENING |

Plaintiff, Matthew Tornquist, an inmate at the South Dakota State Penitentiary (SDSP) filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court granted Tornquist leave to proceed in forma pauperis, and Tornquist timely paid his initial partial filing fee. Doc. 7. Tornquist also filed a motion to appoint counsel. Doc. 4. This Court now screens Tornquist's complaint under 28 U.S.C. § 1915A.

**1915A SCREENING OF COMPLAINT**

I.    **Factual Background**

A.    **COVID-19 Stimulus Funds**

Tornquist claims that the defendants wrongfully confiscated his COVID-19 stimulus check. Doc. 1. On July 25, 2023, the United States Department of the Treasury – Bureau of Fiscal Services mailed Tornquist his stimulus check. *Id.* at 1. The SDSP Inmate Accounting Department received the stimulus funds, which "were instantly stolen from [him] and disbursed to the [Department of Corrections] and also Court Obligations." *Id.* at 1–2. The total amount Tornquist received was $1,996.62, but his stimulus funds were taken in the following manner: (1) $798.65 for the cost of incarceration; (2) $99.83 for "savings overdrawl"; (3) $73.75 for frozen; and (4) $798.65 for court-ordered obligations. *Id.* at 2; Doc. 1-1 at 3, 5. Tornquist did not receive notice of the funds and did not have an option of where he wanted the funds deposited. Doc. 1 at 2–3. Tornquist claims that given the choice, he would have placed all the stimulus funds in his frozen or specialty accounts, not subject to overage fees. *Id.* at 2.

He alleges that the defendants acted wrongfully to use the stimulus funds for restitution because restitution does not start until after release from incarceration. *Id.* at 3. Tornquist filed grievances about the allegedly wrongful taking of his stimulus check. Doc. 1-1 at 10, 12. SDSP Warden Teresa Bittinger and another prison staff member responded to Tornquist's grievances

and informed him that Department of Corrections (DOC) policy states that stimulus and other federal payments could be subject to garnishment. *Id.* at 9, 11. Tornquist appealed his grievances to South Dakota DOC Secretary Kellie Wasko, who denied Tornquist's appeal and informed him that the funds were appropriately deposited. *Id.* at 7–8.

### B.    COVID-19

Tornquist also claims that the defendants violated his rights because they were "deliberately, negligently, willfully being indifferent to [his] personal health (considering they know that [he] ha[s] health issues that could Kill [him] easily from Covid19) and for deliberately exposing [him] to the 'full' effects and sufferings of Covid19." Doc. 1 at 4. He claims that "[t]he viral infections that [he] had contracted (and it's [sic] after effects) should've been avoidable by being priveleged [sic] to a 'safe' environment to be able to quarantine, social distance, and wear a mask to protect from the virus properly." *Id.* at 4–5.

Tornquist claims that Aramark Correctional Food Service, Inc., (Aramark) and Avera Correctional Healthcare (Avera)[1] allowed sick inmates to touch and handle food and did not follow proper COVID-19 guidelines, including not performing temperature checks on inmate workers, not implementing preventative measures, and not requiring inmate workers to wear gloves or masks. *Id.* at 14–15. He also claims that Avera staff were not required to wear masks or gloves. *Id.* He alleges that Aramark and Avera's actions caused the spread of COVID-19 throughout the SDSP and caused Tornquist pain and suffering. *Id.*

---

[1] Aramark is a private company that contracted with the State of South Dakota to provide food services in the DOC facilities. Avera is a private company that contracted with the State of South Dakota to provide medical services in the SDSP. Private companies act under color of state law when providing services in the prison and can be sued under § 1983. *See West v. Atkins*, 487 U.S. 42, 56 n.15 (1988). Thus, for the purposes of screening, the Court assumes that Aramark and Avera were acting under color of state law.

Tornquist alleges that there was a higher rate of COVID-19 infection at the SDSP because food was handled by sick inmates, lack of masks and not enforcing a mask mandate, poor hygienic conditions, close living quarters, and lack of proper healthcare and medical treatment. *Id.* at 3, 5. He claims that he has a higher risk of infection because he is overweight with health issues, he has respiratory and breathing problems requiring a continuous positive airway pressure (CPAP) machine, and he has autism, "which puts [him] in situations that 'normal' people would never be subjected to[.]" *Id.* at 3. Tornquist has contracted COVID-19 at least three times and continues to experience health issues and effects from COVID-19. *Id.* Tornquist filed multiple grievances about contracting COVID-19 and received replies from several DOC employees. Doc. 1-1 at 14–19.

### C.     Wrongful Conviction

Tornquist claims that he was illegally tried and convicted of first degree murder in Pennington County, but he claims that he did not commit the crime and the trial violated 18 U.S.C. § 3235. Doc. 1 at 16. He alleges that he should have been tried in Fall River County. *Id. See also* Doc. 1-1 at 22–24, 26–28. He claims that he "was conspired against in violation of (18 USCA § 241) & (18 USCA § 242), where multiple people were involved in scheming and conspiring against [his] 'unwaived' right to be tried in the county where the crime allegedly was committed." Doc. 1 at 16–17.

### D.     General Information

Tornquist sues all defendants in their individual and official capacities. *Id.* at 1. He requests "[c]ompensation in the amount of $25,000,000 for the pain and suffering endured (personal damages)[,]" $280,000 for deliberate pain and suffering that occurred between 2020 through 2022, and return of his full COVID-19 relief funds. *Id.* at 4–5, 17. *See also* Doc. 1-2 at 2.

*But see* Doc. 1 at 2 (Tornquist "is requesting that the D.O.C. return approximately $1,770.88 of [his] $1,996.62 Stimulus/Covid19 funds."). He also requests that this Court order defendants to stop infringing on his rights to equal protection and due process and an order preventing defendants from retaliating against him. Doc. 1 at 4–5, 17. He also seeks restitution for his allegedly wrongful conviction and false imprisonment. *Id.* at 17.

## II.    Legal Background

The court must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must

screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

## III.   Discussion

### A.      Claims Against the State of South Dakota

Tornquist sues the State of South Dakota. Doc. 1 at 1. The State of South Dakota is generally immune from suit. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989). The Supreme Court has explained that Congress, in passing 42 U.S.C. § 1983, did not abrogate states' Eleventh Amendment immunity from suit in federal court. *Id.* (citations omitted). Thus, Tornquist's claims against the State of South Dakota are barred by the Eleventh Amendment and are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### B.      Claims Against the South Dakota State Penitentiary Industries

Tornquist also sues the South Dakota State Penitentiary Industries, relying on SDCL § 24-7-1. Doc. 1 at 1. SDCL § 24-7-1 states that "[t]he South Dakota State Prison Industries constitutes the operating organization for all of the industries now established at the state penitentiary, including the license plate plant, furniture shop, bookbindery, and sign shop." In Tornquist's complaint, he does not allege any claims related to employment. Doc. 1 at 10. Instead, he claims that he was subject to multiple COVID-19 infections because the SDSP did not implement proper mask mandates, quarantine procedures, social distancing and protective procedures. *Id.* The South Dakota DOC was created by the state legislature and is an arm of the State of South Dakota not subject to suit under § 1983. SDCL § 1-15-1.2. The SDSP was created by state legislature and is also not subject to suit under § 1983. SDCL §§ 24-1-1, 24-1-4. Thus,

Tornquist's claims against the South Dakota State Penitentiary Industries are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### C.    Claims Against Pennington County and Fall River County

Tornquist sues Pennington County because he was illegally tried and convicted of first degree murder, which he claims he did not commit. Doc. 1 at 16. Tornquist sues Fall River County because he alleges that he should have been tried in Fall River County instead of Pennington County. *Id.* Tornquist claims that Pennington County and Fall River County are corporate bodies subject to civil suit under SDCL § 7-18-1. *Id.* However, a county or local government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipal liability attaches "(1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; [or] (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 817–18 (8th Cir. 2009) (citing *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008)).

Here, Tornquist has not identified a specific Pennington County or Fall River County policy or custom that caused a constitutional violation. *See* Doc. 1 at 16–17. Tornquist claims that his state criminal case was tried in the wrong county, but he does not claim that the alleged violation of his rights stems from an unconstitutional policy, custom, or official act. *Id.*; *see also Monell*, 436 U.S. at 694. Thus, Tornquist's claims against Pennington County and Fall River

County are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[2]

### D.    Claims Against Minnehaha County and the City of Sioux Falls

Relying on SDCL § 15-2-14 and SDCL § 8-2-3, Tornquist sues Minnehaha County and the City of Sioux Falls for failure to follow proper mask mandates, quarantine procedures, social distancing, and COVID-19 protective procedures. Doc. 1 at 7–9. However, based on the allegations in his complaint, Tornquist lacks standing to bring his claims against Minnehaha County and the City of Sioux Falls.

Standing "is a threshold question in every federal case, determining the power of the court to entertain suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[T]he standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of a controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id.* at 498–99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). In order to possess standing to bring a claim in federal court, a plaintiff must show

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

---

[2] Even if Tornquist had alleged a wrongful policy or custom, a plaintiff can only recover money damages for a wrongful conviction if "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Because Tornquist has not alleged that his conviction has been reversed, expunged, declared invalid, or called into question by a writ of habeas corpus, his claims for wrongful conviction are dismissed without prejudice also under *Heck* for failure to state a claim upon which relief may be granted.

Tornquist sues Minnehaha County and the City of Sioux Falls for failure to follow proper mask mandates, quarantine procedures, social distancing, and COVID-19 protective procedures. Doc. 1 at 7–9. Liberally construing Tornquist's complaint, he appears to allege *Monell* claims against Minnehaha County and the City of Sioux Falls for deliberate indifference for their failure to adopt, implement, and enforce sufficient COVID-19 protective procedures. *See generally id.* However, during Tornquist's multiple COVID-19 infections, he was incarcerated at the SDSP, which is operated by the State of South Dakota, not Minnehaha County or the City of Sioux Falls. *Id.* at 3, 6–10. Tornquist's alleged injury of multiple COVID-19 infections is not fairly traceable to the challenged action of Minnehaha County and the City of Sioux Falls failing to adopt proper COVID-19 procedures, and, therefore, he lacks standing to sue Minnehaha County and the City of Sioux Falls. Thus, Tornquist's claims against Minnehaha County and the City of Sioux Falls are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### E.      Official Capacity Claims for Money Damages

Tornquist sues all defendants in their individual and official capacities. Doc. 1 at 1. Governor Noem, Wasko, Bittinger, Unit Coordinator Angela Pechous, SDSP Employee Julie Morrison, All Unknown Employees at SDSP, and All Unknown Employees in Accounting are employees of the State of South Dakota. *Id.* Tornquist also sues Avera and Aramark, which contract with the State of South Dakota. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged

deprivations of civil liberties." *Id.* at 66. *See also Carter v. Wasko*, 4:22-CV-04103-RAL, 2023 WL 248233, at *3 (D.S.D. Jan. 18, 2023) (applying Eleventh Amendment immunity to private companies contracting with the State of South Dakota to provide services to state prisons).

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* Here, Tornquist seeks monetary damages against all defendants. Doc. 1 at 4, 5, 17; Doc. 1-2 at 2. Claims against defendants employed by the State of South Dakota in their official capacities are the equivalent of claims for money damages against the State of South Dakota. The State of South Dakota has not waived its sovereign immunity to allow Tornquist's official capacity claims for money damages. Thus, Tornquist's claims against Governor Noem, Wasko, Bittinger, Pechous, Morrison, All Unknown Employees at SDSP, All Unknown Employees in Accounting, Avera, and Aramark in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

**F.    Individual Capacity Claims for Money Damages and Official Capacity Claims for Injunctive Relief**

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Tornquist's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

### 1.   First Amendment Retaliation

Liberally constraining Tornquist's complaint, he alleges a First Amendment retaliation claim. *See* Doc. 1 at 4–5, 17. In order for a plaintiff to allege a First Amendment retaliation claim, he must show that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). Here, Tornquist does not allege that the defendants have retaliated against him. *Id.* Instead, he alleges that the defendants *will* retaliate against him. *Id.* Thus, he has not alleged that a government official took adverse action that would chill a person of ordinary firmness from continuing in the activity; his First Amendment retaliation claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2.   Eighth Amendment

Liberally construing Tornquist's complaint, he alleges Eighth Amendment claims against Governor Noem, Wasko, Bittinger, Pechous, All Unknown Employees at SDSP, All Unknown Employees in Accounting, Avera, and Aramark. Doc. 1 at 7–16.

#### a.   Official Capacity Claims for Injunctive Relief

Tornquist requests the following relief throughout his complaint: (1) an order requiring the DOC to reimburse his full COVID-19 stimulus funds to an account of his choosing; (2) an order requiring the defendants to stop infringing on his rights to equal protection and due process; (3) an order preventing the DOC from retaliating against him for filing this lawsuit; and (4) $25,280,000. Doc. 1 at 4–5, 17. "The requisite elements of Article III standing are well

established: A plaintiff must allege personal injury fairly traceable to the defendant's allegedly

unlawful conduct and likely to be redressed by the requested relief." *Patel v. U.S. Bureau of*

*Prisons*, 515 F.3d 807, 816 (8th Cir. 2008) (quoting *Hein v. Freedom from Religion Found., Inc.*,

551 U.S. 587, 598 (2007)). On Tornquist's Eighth Amendment claims, he does not request any

injunctive relief that is likely to redress the alleged injuries. *See* Doc. 1. Thus, Tornquist's Eighth

Amendment official capacity claims for injunctive relief are dismissed without prejudice for

failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii)

and 1915A(b)(1).

### b.      Deliberate Indifference to Conditions of Confinement

Tornquist sues Governor Noem, Wasko, Bittinger, Pechous, All Unknown Employees at

SDSP, All Unknown Employees in Accounting, Avera, and Aramark for deliberate indifference

to his conditions of confinement in violation of his Eighth Amendment right to be free from cruel

and unusual punishment. Doc. 1 at 11–15.

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane

ones.' " *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511

U.S. 825, 832 (1994)). The Supreme Court has clarified that only "extreme deprivations" that

deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis

of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation and

internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing,

shelter, medical care, and reasonable safety[.]" *Helling v. McKinney*, 509 U.S. 25, 32 (1993)

(citation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner

must prove that (1) objectively, the deprivation was sufficiently serious to deprive him of the

minimal civilized measures of life's necessities or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to inmate health or safety. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances. *Villanueva v. George*, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. *See id.*; *see also Tyler v. Black*, 865 F.2d 181, 183 (8th Cir. 1989) (en banc).

Here, Tornquist does not allege sufficient facts for his Eighth Amendment conditions of confinement claims against All Unknown Employees at SDSP, All Unknown Employees in Accounting, Governor Noem, Wasko, Bittinger, and Pechous to survive screening. Tornquist's vague allegations of insufficient mask mandates or social distancing do not show deliberate indifference and fail to state a claim upon which relief may be granted. He claims that the defendants ignored the Center for Disease Control and Prevention (CDC) guidelines about masks and social distancing. Doc. 1 at 11–14. However, "[t]he Eighth Amendment does not enact the CDC guidelines." *Valentine v. Collier*, 978 F.3d 154, 164 (5th Cir. 2020). Although the Eighth Circuit has recognized an Eighth Amendment claim for failure by prison officials to institute a system to prevent the spread of tuberculosis, a communicable disease, by a pattern of negligent and reckless conduct violated the Eighth Amendment, *see DeGidio v. Pung*, 920 F.2d 525, 527, 533 (8th Cir. 1990), Tornquist's complaint fails to sufficiently allege an Eighth Amendment claim for deliberate indifference.

He also claims that Governor Noem, Wasko, Bittinger, and Pechous failed to train staff on proper COVID-19 procedures. A failure to train claim "requires a showing that the supervisor

had notice that the training procedures and supervision were inadequate and likely to result in constitutional violation." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)). Tornquist has not alleged sufficient facts to show that Governor Noem, Wasko, Bittinger, and Pechous were aware of inadequate training procedures and supervision and that inadequate training and supervision were likely to result in a constitutional violation. Thus, Tornquist's Eighth Amendment conditions of confinement claims against All Unknown Employees at SDSP, All Unknown Employees in Accounting, Governor Noem, Wasko, Bittinger, and Pechous in their individual capacities for money damages are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Tornquist also sues Aramark and Avera for deliberate indifference to his conditions of confinement in violation of the Eighth Amendment. Doc. 1 at 14–16. Under § 1983, a corporation cannot be held vicariously liable for the acts of its employees. *Burke v. N.D. Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam) (citing *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir. 1993)). "[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." *Sanders*, 984 F.2d at 975–76 (citing *Monell*, 436 U.S. at 690, 694). Here, Tornquist claims that Avera did not require its staff to wear masks or gloves in the facility to prevent the spread of COVID-19. Doc. 1 at 14–15. He also claims that Avera did not do proper screenings or follow quarantine procedures and encouraged inmates sick with COVID-19 to work in the kitchen and spread the virus. *Id.* Tornquist claims that Aramark allowed sick inmates to handle food, failed to conduct temperature checks, and did not require

14

inmates to wear gloves or masks. *Id.* at 15. It is unclear from Tornquist's complaint what, if any, actions by Avera and Aramark employees were conducted in accordance with a policy, custom or official action. *See generally id.* Thus, Tornquist's Eighth Amendment conditions of confinement claims against Avera and Aramark are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c.  Deliberate Indifference to Serious Medical Needs

Liberally construing Tornquist's complaint, he alleges claims for deliberate indifference to his serious medical needs against Governor Noem, Wasko, Bittinger, Pechous, All Unknown Employees at SDSP, All Unknown Employees in Accounting, Avera, and Aramark in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Doc. 1 at 11–15. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Est. of Rosenberg*, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he or she] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784 (internal quotation omitted). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) ("[C]onstructive knowledge, or the 'should-have-known' standard, is not sufficient to support a finding of deliberate indifference . . . .").

Here, Tornquist has not alleged sufficient facts for his Eighth Amendment deliberate indifference to serious medical needs claims to survive § 1915A screening. He has not sufficiently alleged that All Unknown Employees at SDSP, All Unknown Employees in Accounting, Governor Noem, Wasko, Bittinger, and Pechous were aware of and deliberately indifferent to his medical needs. *See generally* Doc. 1. He alleges that the defendants ignored CDC guidelines by failing to implement mask mandates and social distancing, *id.* at 11–14, but "[t]he Eighth Amendment does not enact the CDC guidelines." *Valentine*, 978 F.3d at 164. Tornquist's vague allegations about the spread of COVID-19 are insufficient to allege an Eighth Amendment deliberate indifference to serious medical needs claim.

Tornquist also alleges a failure to train claim against Governor Noem, Wasko, Bittinger, and Pechous. Doc. 1 at 11–13. However, Tornquist has not alleged sufficient facts to show that Governor Noem, Wasko, Bittinger, and Pechous were aware of inadequate training procedures and supervision and that inadequate training and supervision were likely to result in a constitutional violation. *Id.*; *Tlamka*, 244 F.3d at 635 (citing *Andrews*, 98 F.3d at 1078). Thus, Tornquist's Eighth Amendment deliberate indifference to serious medical needs claims against All Unknown Employees at SDSP, All Unknown Employees in Accounting, Governor Noem, Wasko, Bittinger, and Pechous in their individual capacities for money damages are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Tornquist also sues Aramark and Avera for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Doc. 1 at 14–16. It is unclear from Tornquist's complaint what, if any, actions by Avera and Aramark employees were conducted in accordance with a policy, custom, or official action. Doc. 1 at 14–15; *Sanders*, 984 F.2d at 975–76 (citing *Monell*, 436 U.S. at 690, 694). Thus, Tornquist's Eighth Amendment deliberate indifference to serious medical needs claims against Aramark and Avera are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3.    Fourteenth Amendment Due Process

Tornquist claims that defendants violated his Fourteenth Amendment right to due process by confiscating his stimulus funds. Doc. 1 at 4, 13–14. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."

*Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting *Wilkinson v. Austin*, 545 U.S.

209, 221 (2005)). An intentional deprivation of property does not violate the due process clause

if there is an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). A

post-deprivation remedy does not satisfy due process requirements if the property deprivation

was effected pursuant to an established state procedure. *Id.* at 532 (citing *Logan v. Zimmerman*

*Brush Co.*, 455 U.S. 422 (1982)).

The Eighth Circuit held that "inmates have a property interest in money received from

outside sources . . . . Thus, inmates are entitled to due process before they can be deprived of

these monies." *Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996). When considering what

process is due before money received from outside sources can be applied toward restitution, the

Eighth Circuit weighs three factors:

> 1) the private interest that will be affected by the official action; 2) the risk of an
> erroneous deprivation of such interest through the procedures used, and the
> probable value of additional or substitute procedures; and 3) the government's
> interest, including the function involved and the fiscal and administrative burdens
> that the additional or substitute procedural requirement would entail.

*Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). In *Hayes v. Graves*, the Eastern

District of Arkansas applied *Mahers* to confiscation of an inmate's stimulus funds. 2022 WL

822881, at *5–6 (E.D. Ark. Mar. 16, 2022). The court in *Hayes* held that as to due process for

confiscation of stimulus funds, "the Eighth Circuit case *Mahers v. Halford* is authoritative as to

restitution and highly persuasive as to court fines, fees, and costs." *Id.* at *6 (internal quotation,

citation, and footnote omitted). Accordingly, the court in *Hayes* held that procedural due process

was satisfied for confiscated stimulus payments put towards restitution, court fines, fees, and

costs but not for payments put toward other funds. *Id.* This Court applied *Hayes* as instructive in

*Cody v. Clark* to find that the plaintiff failed to state a claim for stimulus funds put towards

restitution, court fines, fees, and costs, but held that the plaintiff's claims as to the use of confiscated stimulus funds beyond those uses survived screening. 4:22-CV-04010-KES, 2022 WL 1568871, at *15 (D.S.D. May 18, 2022). *But see Hines v. Johnson*, 4:19-CV-04108-LLP, 2021 WL 1732254, at *2–3 (D.S.D. May 3, 2021) (denying as futile a request for leave to amend complaint to add due process claims against state defendants for deprivation of stimulus funds because common law and SDCL § 21-3-3 provide an adequate post-deprivation remedy).

This Court finds *Mahers*, *Hayes*, and *Cody* instructive in analyzing whether Tornquist's due process claims survive screening. Because Tornquist alleges that the SDSP acted in accordance with an established state procedure when confiscating his stimulus funds, a post-deprivation remedy does not satisfy due process. Doc. 1-1 at 7 (stating that Tornquist's stimulus funds were taken according to policy and that the check "was appropriately deposited"). Tornquist fails to state a claim for the stimulus funds that were confiscated and used for restitution, court fines, fees, and costs. This Court cannot determine on the face of Tornquist's complaint whether all confiscated stimulus funds were used for restitution, court fines, fees, and costs. Thus, Tornquist's Fourteenth Amendment due process claims against Pechous, Morrison, All Unknown Employees at SDSP, and All Unknown Employees in Accounting[3] in their official capacities for injunctive relief and their individual capacities for money damages survive § 1915A screening.

### 4. Fourteenth Amendment Equal Protection

Tornquist claims that the defendants violated his right to equal protection under the Fourteenth Amendment. Doc. 1 at 2, 8–9. The equal protection clause of the Fourteenth

---

[3] Tornquist must identify All Unknown Employees at SDSP and All Unknown Employees in Accounting. This Court bears no responsibility to identify the individuals to whom Tornquist refers and intends to sue.

Amendment requires that the government "treat similarly situated people alike," a protection that applies to prisoners. *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004) (quoting *Rouse v. Benton*, 193 F.3d 936, 942 (8th Cir. 1999)). A plaintiff must first demonstrate that he was treated "differently than others who were similarly situated to h[im]." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994); *In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018) ("[d]issimilar treatment of dissimilarly situated persons does not violate equal protection" (alteration in original) (quoting *Klinger*, 31 F.3d at 731)).

An equal protection violation also requires "an intent to discriminate." *In re Kemp*, 894 F.3d at 910; *see also Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012) (citing *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987)) ("In the absence of any allegations of intentional discrimination, we therefore concluded the Equal Protection Clause did not provide a ground for relief for appellant's section 1983 race discrimination claim."). An equal protection claim has been recognized through a "class of one" where a "plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Tornquist has not alleged that he has been treated differently than other inmates who were similarly situated to him. *See generally* Doc. 1. Tornquist claims that Morrison "showed [him] deliberate indifference when it came to others receiving their[]" stimulus checks, but he does not claim that the defendants treated him differently or that the defendants did not use other inmates' stimulus checks for payment toward their fees and restitution. *Id.* at 13. He also claims that because he has autism, "which puts [him] in situations that 'normal' people would never be subjected to[,]" but he does not allege any specific instance of different treatment. *Id.* at 3. Thus, he fails to state an equal protection claim under the Fourteenth

Amendment; his Fourteenth Amendment equal protection claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 5. Prison Policy

Tornquist claims that Bittinger violated DOC Policy 1.1.1.1 and 1.1.1.A. Doc. 1 at 12. He also claims that all defendants violated DOC Policy 1.6.A.07. *Id.* at 16. Violation of prison policy is not actionable under § 1983. *Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995); *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993). Thus, Tornquist's claims for violation of prison policy are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 6. The Americans with Disabilities Act

Tornquist alleges claims under the Americans with Disabilities Act (ADA). Doc. 1 at 7–8. "The ADA consists of three titles addressing discrimination against the disabled in different contexts." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998). "Title I prohibits employment discrimination, Title II prohibits discrimination in the services of public entities, and Title III prohibits discrimination by public accommodations involved in interstate commerce such as hotels, restaurants, and privately operated transportation services[.]" *Id.* (citing 42 U.S.C. §§ 12112, 12132, 12182, 12184). Tornquist does not specify which Title of the ADA he alleges is being violated, but the Court liberally construes Tornquist's complaint to allege a claim for violation of Title II. Title II states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, Tornquist must allege

> (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [prison's] services, programs, or

activities, or was otherwise subjected to discrimination by the [prison]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability.

*Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010).

Here, Tornquist claims that he is autistic and mentally disabled, "which puts [him] in situations that 'normal' people would never be subjected to[.]" Doc. 1 at 3. *See also id.* at 8–9. Although he claims that he has a disability, he does not claim that he was excluded from participation in or denied benefits of services, programs, or activities or otherwise subjected to discrimination by reason of his disability. *Id.* at 3, 8–9. Thus, Tornquist's claims under the ADA are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 7.    The CARES Act

Tornquist claims that Morrison, All Unknown Employees at SDSP, and All Unknown Employees in Accounting violated his rights under the Coronavirus Economic Stabilization Act (CARES Act). Doc. 1 at 13–14. The economic impact payments are codified in the Internal Revenue Code under 26 U.S.C. §§ 6428, 6428A, and 6428B. *See also Jones v. United States*, 2021 U.S. Dist. LEXIS 91519, at *2 (E.D. Ark. May 13, 2021). However, many courts have held that the CARES Act does not create a private right of action. *McClendon v. Benard*, 2021 WL 5567369, at *2 (E.D. Ark. Nov. 29, 2021) (collecting cases); *Patterson v. Bank of Am. N.A.*, 2023 U.S. Dist. LEXIS 182756, at *5 (E.D Mo. Oct. 11, 2023) (collecting cases). Thus, Tornquist's claims under the CARES Act against Morrison, All Unknown Employees at SDSP, and All Unknown Employees in Accounting are dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 8.    18 U.S.C. §§ 241 and 242

Tornquist claims that defendants violated his rights to be safe under 18 U.S.C. §§ 241 and 242. Doc. 1 at 7–9, 11, 14, 16. However, 18 U.S.C. §§ 241 and 242 are criminal statutes that do not provide a private right of action. *United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998). Thus, Tornquist's claims under 18 U.S.C. §§ 241 and 242 are dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 9.    Conspiracy

Tornquist claims that the defendants conspired to violate his right to be safe. Doc. 1 at 14. In order to allege a conspiracy under § 1983, Tornquist must show: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Livers v. Schenck*, 700 F.3d 340, 360–61 (8th Cir. 2012) (citation omitted). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)). A plaintiff can show the existence of a conspiracy through circumstantial evidence, but a plaintiff must allege "specific facts tending to show" that the defendants reached an agreement to deprive the plaintiff of a constitutional right or a meeting of the minds. *See Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). Here, Tornquist has not alleged facts that tend to show a meeting of the minds or that the defendants reached an agreement to deprive him of a constitutional right. *See* Doc. 1 at 14. Thus, Tornquist's conspiracy claim is dismissed without prejudice for failure to

state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

1915A(b)(1).

### 10. SDCL §§ 27A-12-1 and 27A-12-1.1

Tornquist claims that "many SD Codified Laws including (SDCL § 27A-12-1). 'Persons'

defined under (SDCL § 27A-12-1.1)" apply to his claims. Doc. 1 at 8–9. SDCL § 27A-12 applies

to the care, treatment, and rights of mentally ill persons. SDCL § 27A-12-1 states that

> Each person has the right to a humane environment that affords appropriate
> individual privacy, individual dignity and reasonable protection from harm. These
> rights shall be respected at all times and upon all occasions, including any occasion
> when the person is taken into custody, detained, or transported in accordance with
> the provisions of this title.

SDCL § 27A-12-1.1 defines "person" as "any individual subject to the authority of this title,

either on a voluntary or involuntary basis." The Court questions the applicability of SDCL

§ 27A-12-1 to Tornquist's claims because he does not allege that he has been involuntarily

committed to the SDSP for mental health treatment. *See generally* Doc. 1. It is also unclear if

SDCL § 27A-12-1 provides a private right of action. Even if SDCL § 27A-12-1 was applicable

and did provide a private right of action, Tornquist has not alleged that his rights to privacy and

dignity are violated because he suffers from a mental illness. *See generally* Doc. 1. Tornquist

claims that because he has autism he was placed in situations that "normal" people would not be

subjected to. *Id.* at 3. However, he has not alleged any specific situations that he has been

subjected to nor has he alleged a deprivation of his right to privacy and dignity because he

suffered from a mental illness. *Id.* Thus, Tornquist's claims under SDCL §§ 27A-12-1 and 27A-

12-1.1 are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## MOTION TO APPOINT COUNSEL

Tornquist filed a motion to appoint counsel. Doc. 4. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (citing *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985)). In determining whether to appoint counsel to a pro se litigant's civil case, the district court considers the complexity of the case, the ability of the indigent litigant to investigate the facts, the existence of conflicting testimony, and the indigent's ability to present his claim. *Id.* (citation omitted). Tornquist's claims do not appear to be factually or legally complex, and his filings clearly set forth his claims. Tornquist moves to appoint counsel because he is "Autistic and ha[s] substantial learning disabilities and [is] completely unable to litigate this case AT ALL." Doc. 4 at 1. "Although [a plaintiff's] mental condition is a factor that may weigh in his favor, it does not of itself require that counsel be appointed." *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995) (citing *Phelps v. U.S. Fed. Gov't*, 15 F.3d 735, 737 (8th Cir. 1994)), abrogated on other grounds by *Doe v. Cassel*, 403 F.3d 986 (8th Cir. 2005). Considering these factors, the Court does not deem it necessary to appoint counsel at this early stage in litigation.

## CONCLUSION

Accordingly, it is ORDERED:

1.  That Tornquist's claims against the State of South Dakota and the South Dakota State Penitentiary Industries are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2.  That Tornquist's claims against Governor Noem, Wasko, Bittinger, Pechous, Morrison, Unknown Employees (Inmate Accounting at SDSP), Unknown Employees (at SDSP),

Avera, and Aramark in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

3. That Tornquist's Fourteenth Amendment due process claims against Pechous, Morrison, All Unknown Employees at SDSP, and All Unknown Employees in Accounting in their official capacities for injunctive relief and their individual capacities for money damages survive § 1915A screening.

4. That Tornquist's claims for violation of prison policy are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5. That Tornquist's claims under the CARES Act against Morrison, All Unknown Employees at SDSP, and All Unknown Employees in Accounting are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6. That Tornquist's claims under 18 U.S.C. §§ 241 and 242 are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7. That Tornquist's remaining claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

8. That Tornquist's motion to appoint counsel, Doc. 4, is denied.

9. That the Clerk shall send blank summons forms and Marshal Service Forms (Form USM-285) to Tornquist so that he may cause the complaint to be served upon Defendants Pechous and Morrison.

10. That Tornquist, after identification of All Unknown Employees at SDSP and All Unknown Employees in Accounting, shall inform the Clerk of Court of the unknown defendants' identities. At such time, the Clerk of Court shall send Tornquist blank summonses and Marshal Service Forms for the identified defendants.

11. That Tornquist shall complete and send the Clerk of Court a separate summons and USM-285 form for Pechous and Morrison within **thirty days** of the date of this order. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

12. That the United States Marshal Service shall serve the completed summonses, together with a copy of the complaint (Doc. 1) and this order, upon Defendants Pechous and Morrison. The United States Marshal Service shall serve the completed summonses, together with a copy of the complaint (Doc. 1) and this order, upon All Unknown Employees at SDSP and All Unknown Employees in Accounting after Tornquist provides the Clerk with their identities.

13. That defendants will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

14. That Tornquist will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

DATED August 26, 2024.

ATTEST:
MATTHEW W. THELEN, CLERK

BY THE COURT:

Lawrence L. Piersol
United States District Judge

27